IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THOMAS SPANO | ) | CIVIL ACTION NO. 3:16-CV-245 |
|---|---|---|
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. Introduction

This lawsuit arises from a dispute involving an alleged workplace accident of Plaintiff, Thomas Spano, while he was an employee of Defendant, CSX Transportation ("CSXT"). Spano brings two causes of action – one for the concussion allegedly sustained under the Federal Employers' Liability Act, and one for an alleged wrongful discharge under the Federal Rail Safety Act. (ECF No. 1.) Presently before the Court are the following motions: (1) Spano's Motion for Leave to Propound Additional Interrogatories (ECF No. 19), (2) CSXT's Motion for Protective Order Regarding Depositions of CSXT Current and Former Employees (ECF No. 22), (3) Spano's Motion to Compel Site Inspection without Waiver (ECF No. 23), and (4) Spano's Motion to Compel Personnel Files (ECF No. 24). All four motions have been briefed. The Court will discuss each of these motions in turn.

## II. Motion for Leave to Propound Additional Interrogatories

Spano requests that the Court permit him to serve an additional 25 interrogatories, including discreet subparts, upon CSXT. Spano avers that the additional interrogatories are necessary to account for the fact that the action involves two related claims that are essentially two cases in one action. As such, Spano claims he would be prejudiced without the additional interrogatories, although he does not explain exactly why they are necessary. (ECF No. 19 at 6-7.) Additionally, Spano notes that CSXT would suffer no adverse consequences by answering additional interrogatories because CSXT has ample representation, based on the fact three attorneys participated in the Initial Rule 26 Conference. (ECF No. 19 at 7.)

CSXT refused to stipulate to Spano serving an additional 25 interrogatories and filed a response in opposition to the motion. Notably, CSXT points out that Spano has already served 40 interrogatories upon CSXT, thereby exceeding the limit allowable under Rule 33. (ECF No. 20 at 3.) CSXT argues Spano has not established any particularized need to justify the request for additional interrogatories, which is a requirement imposed by many Federal Courts, and that Spano's general statement that he would "be prejudiced" without the additional interrogatories is insufficient. (ECF No. 20 at 3.) Additionally, CSXT claims that it is not possible for Spano to show any particularized need as the case involves two "relatively straight-forward causes of action," and the information Spano seeks through the additional interrogatories can and will be provided through other means including self-executing discovery through initial disclosures, requests for production of documents, and depositions of CSXT personnel that will likely raise the same questions. (ECF No. 20 at 4-5.) Finally, CSXT notes that Spano previously filed a

separate claim through OSHA regarding the same alleged incident, so Spano has already received the benefit of exchange of information and investigation. (ECF No. 20 at 4.)

Generally, parties are limited to serving 25 interrogatories unless otherwise stipulated or ordered by the court. Rule 33 explains this requirement:

> Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).

Fed. R. Civ. P. 33. While Rule 26(b)(1) allows for a broad scope of discovery generally including all relevant nonprivileged materials, Rule 26(b)(2) provides some limits a court may impose. In particular, the court must limit discovery otherwise allowable if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c)(i).

The Court finds CSXT's arguments to be compelling. First, courts do typically require a party to show a "particularized need" for additional interrogatories. *See, e.g., Heggem v. Monroe Correctional Complex*, 2012 WL 4369299 (W.D. Was. 2012); *Illiana Surgery and Medical Center v. Hartford Fire Insurance Co.*, 2008 WL 5111358 (N.D. Ind. 2008); *Duncan v. Paragon Publishing, Inc.*, 204 F.R.D. 127 (S.D. Ind. 2001); *Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486 (W.D. N.C. 1998). Here, Spano has not identified a "particularized need" for additional interrogatories. While he points out that his complaint brings two separate claims, that is not at all uncommon. Without more of an explanation, and given the fact that Spano has already served 40 interrogatories, the Court cannot conclude that there is a "particularized need."

3

Likewise, Spano's 25 additional interrogatories appear to be unreasonably cumulative and duplicative, and therefore may be limited by the Court. Much of the additional sought-after information may be supplied through self-executing discovery, requests for production of documents, depositions of CSXT personnel, or in the 40 interrogatories Spano has already served upon CSXT. *See McMenamin v. M & P Trucking Co.*, 1994 U.S. Dist. LEXIS 4595 *7 (E.D. Pa. Apr. 7, 1994) (additional interrogatories are excessive when much of the sought-after information should already have been supplied by the self-executing discovery). As already discussed, although Spano claims that the additional 25 interrogatories are justified by the added complexity of two causes of action in one case, Spano has already exceeded the limit allowable by Rule 33 by serving 15 additional interrogatories that CSXT did not oppose, which surely must compensate for any extra complexity. *See McMenamin*, 1994 U.S. Dist. LEXIS 4595, at *8 (a limit of twenty-five interrogatories is reasonable in the usual civil lawsuit). And again, Spano provided no further explanation for why he would suffer prejudice without 25 more interrogatories, making it a bare bones request that offers no basis for how the benefit may outweigh the burden of the excessive interrogatories. *See DeFranco v. Wolfe*, 2006 U.S. Dist. LEXIS 40996, at *4 (W.D. Pa. June 20, 2006) (motion for two additional interrogatories denied due to bare bones request). Therefore, the Court will deny the motion for leave to propound additional interrogatories.

### III. Motion for Protective Order Regarding Depositions of CSXT Employees

CSXT requests that the Court grant a Motion for Protective Order Regarding Depositions of CSXT Current and Former Employees that would limit the depositions of CSXT personnel solely for the purposes of this litigation and return the depositions to CSXT following

4

the conclusion of the case. CSXT states that the proposed protective order is necessary because the purpose of discovery is to gather information only for use in the pending suit, and accuses Spano of having a sought-after use that is outside the scope of permissible discovery being as Spano provided no sufficient reason why unrestricted use of the depositions is necessary. (ECF No. 22 at 4.) CSXT repeatedly questions the motives of Spano, believing Spano must have improper intentions or he would have agreed to the order. (ECF No. 22 at 9.) Additionally, CSXT argues the order is necessary in order to protect CSXT employees against annoyance, embarrassment, and oppression, as well as confidential personnel information. (ECF No. 22 at 7.) Examples of information CSXT wishes to protect are the personal and employment history of CSXT employees, the details of Spano's termination, and internal corporate documents and policies, which CSXT worries may bring unsolicited attention and ridicule for employees. (ECF No. 22 at 8.) Once again, CSXT questions the motives of Spano's counsel, and suggests that the depositions may be graphically altered, broadcast in the media, or used as marketing material for Spano's counsel without a protective order. (ECF No. 22 at 11.)

Spano filed a response in opposition to the motion after being unable to reach an amicable resolution to this dispute pursuant to Rule 26(c)(1), as Spano's counsel refused to agree to a protective order or to return depositions following the case. Spano claims that CSXT's arguments regarding Spano's intentions provide nothing more than accusatory speculation that is an "incredibly unprofessional and insulting diatribe," particularly because opposing counsel has never met Spano's counsel. (ECF No. 25 at 7.) Spano states that CSXT's motion does not provide any evidence that CSXT or its employees would suffer any "annoyance, embarrassment, oppression, or undue burden or expense" as required by Rule 26(c), noting that

5

CSXT was not able to provide even one affidavit from any of the employees that will be deposed indicating they would suffer without a protective order. (ECF No. 25 at 1.) Furthermore, Spano's counsel believes there is no reason for a protective order now simply to appease CSXT's counsel, as he has conducted dozens of depositions of CSXT employees over his career without such an order. (ECF No. 25 at 2.) Finally, Spano acknowledges that even though the purpose of depositions is for use in connection with the present litigation, the Federal Rules of Civil Procedure do not require a protective order any time a party wishes to take depositions of witnesses. (ECF No. 25 at 4.)

After attempting to resolve the dispute without court action, a party may seek a protective order regarding a deposition from the court, for good cause, "in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The court may choose to disclose the materials only in a designated way, which is the request of CSXT. Fed. R. Civ. P. 26(c)(1)(g). CSXT has the burden to demonstrate good cause by showing a particular need for the protective order. *Smith v. Bic Corp.*, 869 F.2d 194, 199 (3d Cir. 1989). Good cause is demonstrated by the party establishing a "clearly defined and serious injury shown with specificity" that will result without the protective order. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm unsubstantiated by specific examples or articulated reasoning" are insufficient. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Additionally, while preventing embarrassment may satisfy "good cause," a party who requests a protective order with the main concern of preventing embarrassment must demonstrate that any embarrassment will be particularly serious. *Id.*

In this case, the Court finds that CSXT failed to show "good cause," and thus the Motion for Protective Order will be denied. While CSXT argues that Spano has not presented any sufficient reasons why the unrestricted use of the depositions is necessary, the burden falls upon CSXT to show why the protective order is necessary, not upon Spano to show why it is not necessary. CSXT fails to present any particular injuries that the employees or company will suffer. Instead, CSXT merely states that those deposed will suffer "annoyance, embarrassment, and oppression" by the possible discussion of personal and employment history, and that CSXT wishes to keep corporate documents and policies out of the public sphere. (ECF No. 22 at 8.) CSXT also presents fears about the motives of Spano's counsel based solely on his refusal to agree to an order. None of these statements are enough to demonstrate "good cause," as they merely present broad allegations of harm with no specific examples. In fact, CSXT itself states that it is not yet aware of the scope of the depositions sought, thereby making it impossible for CSXT to present specific examples of harm serious enough for a protective order. (ECF No. 22 at 5.) Likewise, although CSXT correctly states that depositions are to be used for discovery purposes within the litigation, the Federal Rules of Civil Procedure do not require a protective order for every deposition, and the Court will not order one without a showing of good cause. Therefore, the Court will deny the motion for protective order regarding depositions of CSXT current and former employees.

### IV. Motion to Compel Site Inspection Without a Release

Spano requests that the Court grant a Motion to Compel Site Inspection Without a Release of the locomotive where Spano suffered the alleged injury of this case. CSXT agreed to permit an inspection, but only if Spano and his counsel sign a release of liability for any injury

7

caused by CSXT's negligence during the site inspection. (ECF No. 23 at 2.) Spano argues that such a release is contrary to the legal responsibilities of a Pennsylvania landowner and the Federal Rules of Civil Procedure, considering CXST is attempting to condition the ability to obtain discovery that is entitled as a matter of right. (ECF No. 23 at 2.) As support for these claims, Spano cites various cases to assert that courts have consistently ruled that waiver agreements to enter and inspect property are inappropriate. *See Hindle v. National Builk Carrier, Inc.*, 18 F.R.D. 198 (S.D.N.Y. 1955); *Melis v. Veritas Steamship Company, Inc.*, 197 N.Y.S.2d 268 (N.Y. 1960); *United States v. Bunker Hill Company*, 417 F.Supp. 332 (D.Id. 1976); *O'Neil v. Seatrain Lines, Inc.*, 445 N.Y.S.2d 925 (N.Y. 1981). Furthermore, Spano claims that on many occasions freight railroads, including CSXT, have been prevented from conditioning site inspections on the signing of releases. (ECF No. 23 at 3.)

CSXT filed a response in opposition to Spano's motion, claiming there is not an "unlimited right" to a site inspection by pointing to language in Rule 34(b) that allows for inspections in a "reasonable time, place, and manner." (ECF No. 26 at 4.); Fed. R. Civ. P. 34 (b). CSXT asserts that Rule 34 site inspections must be balanced against the burdens and dangers created by the inspection, and the release from liability is necessary to alleviate the burden and danger. (ECF No. 26 at 6.) Because Spano and his counsel intend to reenact Spano's backwards fall without actually falling, CSXT maintains that this is a dangerous activity that places a significant burden on the company as there is a substantial chance Spano may actually fall during the reenactment. (ECF No. 26 at 7.)

Generally, a party may serve a request "within the scope of Rule 26(b) to permit entry onto designated land or other property possessed by the responding party" in order to "inspect,

8

measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). The request itself "must describe with particularity each item to be inspected" and "must specify a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ. P. 34(b)(1). Generally, the extent of the duty owed to a person in a certain situation is fixed by law, and does not vary simply because the person is only there for the purpose of obtaining evidence through an inspection. *See Hindle*, 18 F.R.D. at 199 (a ship may not alleviate its legal duty through a waiver because the ship is not doing a favor by permitting access and is in no position to stipulate that it shall receive treatment more favorable than that to which it would be entitled by law in the event of an accident). However, other Circuit Courts of Appeals have held that the "degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection," based on the requirement that the inspection must fall within the scope of Rule 26(b). *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 907 (4th Cir. 1978).

In this case, it is clear that CSXT may not require a release of liability in order for Spano to visit, inspect, photograph and video the inside of the train engine. Spano is entitled to photograph and video as part of an inspection under Rule 34(a)(2), and CSXT has not argued that allowing photography or video inside the train engine is overly burdensome or dangerous. Therefore, the duty typically owed by law may not be alleviated through a release or waiver, and Spano's motion to compel site inspection without a release is granted in part with respect to visiting the site where the train is located and performing an inspection of the train, including any photography and videography that takes place during the inspection. However, CSXT has presented a compelling argument for how the reenactment of a fall could be a dangerous

9

activity that is overly burdensome. It is reasonable for CSXT to offer a way of mitigating this burden rather than refusing to allow Spano to reenact a fall at all. Therefore, the inspection may be limited regarding this activity, and if Spano wishes to reenact the fall while inspecting the train, he will need to sign the release of liability. CSXT shall narrow the scope of the proposed release to cover only a reenactment of the alleged injury.

## V. Motion to Compel Personnel Filed

Spano requests that this Court compel production of the personnel file of Justin Widmer, a CSXT employee who is the sole eyewitness to Spano's alleged injury. (ECF No. 24 at 2.) Widmer was the operator of the locomotive where Spano claims he fell, and will be a key witness at trial considering Widmer has consistently claimed that Spano never fell and hit his head. (ECF No. 24 at 3.) Spano argues that this personnel file is relevant in determining the credibility (or lack thereof) of Widmer, as "it will come down to a 'he said-he said' dispute at trial between Widmer and Spano. (ECF No. 24 at 3.) Moreover, Spano claims that Widmer has the most reason to lie about Spano's alleged injury since Widmer was likely the cause of the injury since he was the operator of the locomotive that broke apart from the train and caused Spano to fall. (ECF No. 24 at 4.) Spano additionally argues that he would be prejudiced in taking the deposition of Widmer without the personnel file because it is needed to properly question him about training he had received, jobs he had worked, and other relevant matters. (ECF No. 24 at 4.)

CSXT filed a response in opposition to Spano's motion, claiming that Widmer's personnel file is both irrelevant and confidential. (ECF No. 27 at 3.) Because Widmer is only a witness and not a party to this litigation, CSXT asserts that the information contained in his

10

personnel file, such as training records, background check, employment application, and other information, is beyond the scope of relevant and an invasion of privacy. (ECF No. 27 at 3.) CSXT states that there are no documents related to the incident of Spano's alleged injury in the file, and that Widmer's statement regarding the incident has already been produced. (ECF No. 27 at 4.) Additionally, CSXT equates Spano's request of the personnel file to a general fishing expedition that is merely designed to harass and embarrass. (ECF No. 27 at 5.) Finally, CSXT requests that to the extent the Court requires CSXT to produce the file, the Court first conduct an in camera review of the documents to determine the relevancy and require only documents deemed to be relevant and discoverable be produced. (ECF No. 27 at 6.)

Generally, materials that are relevant to an issue in a case are discoverable unless they are privileged. Rule 26 explains the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). While the scope of discovery under the Federal Rules is broad, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Indeed, Rule 26(b)(1) imposes "two content-based limitations upon the scope of discovery: privilege and relevance." *Trask v. Olin Corp.*, 298 F.R.D. 244, 257 (W.D. Pa. 2014). Additionally, even relevant discovery may also be limited by a court if the burden of producing it outweighs the benefit based on the specifics of the case. Fed. R. Civ. P. 26(b)(1).

11

Requests for personnel files are subject to a heightened relevancy standard since there is a strong public policy against disclosure of personnel information. *See e.g., Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 319 F.R.D. 214, 219 (W.D. Pa. 2017); *Santer v. Teachers Ins. & Annuity Ass'n*, No. CIV.A. 06-CV-1863, 2008 WL 755774, at *6 (E.D. Pa. Mar. 18, 2008); *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 184 (E.D. Pa. 2004). Courts often balance the following factors: whether there is another way for the requesting party to obtain the information sought *Saldi*, 224 F.R.D. at 184; whether there is other evidence suggesting the personnel files are likely to include relevant information *Santer*, 2008 WL 755774, at *6; how broad the request is *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999); and how closely the personnel files relate to the requesting party's claims *Stabilus, A Div. of Fichtel & Sachs Indus., Inc. v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 266 (E.D. Pa. 1992).

In this case, although the request is narrow in that it only asks for one file, the other factors do not meet the heightened relevancy requirement. Spano wants the personnel file to assess the credibility of Mr. Widmer and look for any possible incentive we would have to lie about Spano's alleged injury, but this same information could likely be obtained through Mr. Widmer's deposition. Likewise, despite Spano's argument to the contrary, it is unnecessary to have the personnel file listing Widmer's training, jobs, and other relevant information in order to prepare questions for the deposition to ask for the same information. *See Kaufman v. Nationwide Mut. Ins. Co.*, No. CIV. A. 97-1114, 1997 WL 703175, at *1 (E.D. Pa. Nov. 12, 1997) (denying request for personnel files where depositions of the insurer's employees would be sufficient to obtain similar information). Additionally, Spano has not presented any other evidence to support his theory that the personnel file is likely to include information relevant to

the claim other than the assertion that Widmer may be a key witness at trial. *See Santer*, 2008 WL 755774, at *6 (analyzing the other evidence adduced by the moving party to see if there was good reason to believe production of the personnel files would outweigh privacy and other concerns). Therefore, the Court finds that the heightened relevancy standard for personnel files is not met, and Spano's motion to compel Widmer's personnel file will be denied.

## VI. Conclusion

For the reasons discussed above, Spano's Motion for Leave to Propound Additional Interrogatories (ECF No. 19), CSXT's Motion for Protective Order Regarding Depositions of CSXT Current and Former Employees (ECF No. 22), and Spano's Motion to Compel Personnel Files (ECF No. 24) will all be denied. Spano's Motion to Compel Site Inspection without Waiver (ECF No. 23) is granted in part and denied in part.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS SPANO | ) | CIVIL ACTION NO. 3:16-CV-245 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 3rd day of August, 2017, upon consideration of the pending discovery motions, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Leave to Propound Additional Interrogatories (ECF No. 19), Defendant's Motion for Protective Order Regarding Depositions of CSXT Current and Former Employees (ECF No. 22), and Plaintiff's Motion to Compel Personnel Files (ECF No. 24) are all **DENIED**.

2. Plaintiff's Motion to Compel Site Inspection without Waiver (ECF No. 23) is **GRANTED** in part and **DENIED** in part. Specifically, Defendant is ordered to allow Plaintiff to visit and inspect the train without a release. Defendant, may, however, require a release if Plaintiff intends to perform a reenactment of the

14

alleged injury, and if the release is limited only to the reenactment.

BY THE COURT:

*[signature: Kim R. Gibson]*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE